**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| LORA BETH PRIESTLY,<br><br>           Plaintiff,<br><br>      v.<br><br>KILOLO KIJAKAZI[1]<br>Acting Commissioner of Social Security,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:20-cv-1261 JLT<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 14) AND AFFIRMING THE ADMINISTRATIVE DECISION<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITYAND AGAINST PLAINTIFF LORA BETH PRIESTLY |

Lora Beth Priestly asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating her mental residual functional capacity and failed to properly question the vocational expert regarding her physical limitations. (*See* Doc. 14.) For the reasons set forth below, the ALJ's decision is **AFFIRMED**.

## BACKGROUND

In September 2016, Plaintiff filed an application for benefits, alleging she became disabled in April 2016 due to level 3 spinal stenosis, degenerative arthritis, and bipolar disorder with suicidal ideation. (Doc. 10-4 at 2; Doc. 10-6 at 2-8.) The Social Security Administration denied the

---

[1] The action was originally filed against Andrew M. Saul in his capacity as the Commissioner of Social Security. (*See* Doc. 1 at 1.) The Court has substituted Kilolo Kijakazi, who has since been appointed the Acing Commissioner of Social Security, as the defendant. *See* Fed. R. Civ. P. 25(d).

application at the initial level and upon reconsideration. (*See generally* Doc. 10-4.) Plaintiff requested an administrative hearing and testified before an ALJ on April 10, 2019, and September 18, 2019. (*See* Doc. 10-3 at 17.) The ALJ found Plaintiff was not disabled and issued an order denying benefits on September 27, 2019. (*Id.* at 17-26.) Plaintiff requested review of the decision by the Appeals Council, which denied the request on July 15, 2020. (*Id.* at 2-4.) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld if the proper legal standards were applied and the findings are supported by substantial evidence. *Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v.*

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the application date of September 22, 2016. (Doc. 10-3 at 19.) Second, the ALJ found "[t]he claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, carpal tunnel syndrome, chronic obstructive pulmonary disease, bipolar disorder, anxiety disorder, and depressive disorder." (*Id.*) At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (*Id.* at 20-21.) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work, as defined in 20 CFR 416.967(b), except the claimant can lift 20 pounds maximum occasionally, and 10 pounds frequently. The claimant can stand and/or walk for 6 hours. The claimant can sit for 6 hours. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can frequently perform gross manipulation with the bilateral upper extremities. The claimant must avoid more-than-frequent exposure to extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. The claimant is limited to simple, repetitive, routine tasks; no production-rate pace, or have a quota-type job. The clamant can have occasional interaction with supervisors, co-workers, and the public.

(*Id.* at 21.) With this residual functional capacity, the ALJ determined at step four that Plaintiff was unable to perform her past relevant work. (*Id.* at 24.) However, the ALJ found at step five that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," such

as housekeeper, electrical assembler, and merchandise marker. (*Id.* at 25.) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 26.)

## **DISCUSSION AND ANALYSIS**

Plaintiff argues the ALJ erred at step two in evaluating her mental residual functional capacity. (Doc. 14 at 5-9.) In addition, Plaintiff asserts the ALJ failed to pose a proper hypothetical question to the vocational expert that incorporated her level of physical impairment. (*Id.* at 9-11.) On the other hand, the Commissioner asserts the decision "is supported by substantial evidence and free of reversible legal error." (Doc. 15 at 22; *see also id.* at 10-22.)

**A.     Plaintiff's Mental Residual Functional Capacity**

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); see also 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating an RFC, the ALJ weighs medical and other source opinions, as well as the claimant's subjective statements. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). Further, the ALJ must consider "all of [a claimant's] medically determinable impairments," whether severe or not, when assessing an RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

1.     Physicians' opinions

Dr. Dante Mancini completed a mental residual functional capacity on November 30, 2016. (Doc. 10-4 at 10-13.) Dr. Mancini opined Plaintiff was "[n]ot significantly limited" with her ability to carry out simple instructions, "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" "sustain an ordinary routine without supervision;" "work in coordination with or in proximity to others without being distracted by them;" and "accept instructions and respond appropriately to criticism from supervisors." (*Id.* at 11-12.) Dr. Mancini found Plaintiff was "[m]oderately limited" in her "ability to carry out detailed instructions," and "maintain attention and concentration," and "complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of length and rest periods." (*Id.* at 11.) Dr. Mancini explained the concentration and persistence findings by stating:

4

"The claimant is able to carry out very short and simple instructions (i.e., perform one and two step tasks). The claimant is capable of working within a work schedule and at a consistent pace." (*Id.* at 12.) Dr. Mancini concluded:

> The claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment. The claimant can understand, retain, and follow simple job instructions (i.e., perform one and two step tasks) and can perform simple, routine, repetitive tasks in a stable environment.

(*Id.* at 11-12.)

On February 12, 2017, Dr. Annette Brooks-Warren also completed a mental residual functional capacity assessment. (Doc. 10-4 at 26-28.) Dr. Brooks-Warren also opined Plaintiff was "[n]ot significantly limited" with her "ability to understand and remember very short and simple instructions" and had moderate limitations with understanding, remembering, and carrying out detailed instructions. (*Id.* at 26.) Dr. Brooks-Warren explained the limitations by stating: "The claimant can understand, retain, and follow simple job instructions (i.e., perform one and two step tasks). The claimant can perform simple, routine, repetitive tasks in a stable environment." (*Id.*) Further, she opined Plaintiff had moderate limitations with the ability to maintain attention and concentration, interacting with the public, getting along with coworkers, and adapting to changes at work. (*Id.*) She found Plaintiff could "sustain an ordinary routine without special supervision." (*Id.* at 28.) Dr. Brooks-Warren concluded:

> The claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment. The claimant can understand, retain, and follow simple job instructions (i.e., perform one and two step tasks) and can perform simple, routine, repetitive tasks in a stable environment.

(*Id.*)

### 2. The ALJ's RFC determination

The ALJ indicated he gave "little weight to the findings of Dr. Mancini," which Dr. Brooks-Warren affirmed at the reconsideration level, in formulating the mental RFC. (Doc. 10-3 at 24.) The ALJ explained Plaintiff had "greater" mental limitations than those identified by Dr. Mancini. (*Id.*) The ALJ opined: "The record does support limiting the claimant to simple, routine, repetitive tasks; however, the record further supports restriction [from] quota-type work, accounting for the claimant's allegations of racing thoughts. The interaction limitations provided above are also necessary for the

claimant's anxiety and mood issues." (*Id.*)

Plaintiff contends the ALJ erred in addressing the mental limitations identified by Drs. Mancini and Dr. Brooks-Warren—who were the only physicians to give opinions related to her mental impairments— because the ALJ did not identify any reason for rejecting "the limitation to one and two-step instructions" identified by the physicians. (Doc. 14 at 7.) Plaintiff observes, "The ALJ did not give a logical or rational reason for rejecting limitation to one and two-step instructions." (*Id.*) Plaintiff argues "[t]he difference between simple work and one and two-step instructions is significant." (*Id.*, citing *Rounds v. Comm'r of Soc. Sec. Admin*, 807 F.3d 996, 1002-04 (9th Cir. 2015).) Plaintiff contends the ALJ erred because he "did not explain any reason for rejecting that finding made by the state agency psychologist and psychiatrist" and "did not provide a decision that permits meaningful review of the reasons for rejecting that opinion evidence." (*Id.* at 8.)

The Commissioner argues the ALJ was not required to explain why the restriction to "one and two-step instructions" was not adopted. (Doc. 15 at 12-14.) The Commissioner asserts "neither Drs. Mancini or Brooks-Warren opined that one and two-step tasks was the *most* Plaintiff could do despite her limitations." (*Id.* at 13.) The Commissioner observes: "twice after the doctors stated that Plaintiff could perform one and two-step tasks, they immediately followed with a further statement that she could perform simple, routine, repetitive tasks in a stable environment." (*Id.*) The Commissioner argues that "[t]he ALJ in this case explicitly found that the limitation to simple, routine, repetitive tasks was supported by the record [citation], as her providers described her cognition and memory as intact." (*Id.*)

Significantly, though Drs. Mancini and Brooks-Warren opined Plaintiff could perform "simple, routine, repetitive tasks," they also repeatedly indicated their belief that she could "perform one and two step tasks." (Doc. 10-4 at 11-12, 26, 28.) The ALJ did not address—or even acknowledge— the narrative findings of Drs. Mancini and Brooks-Warren indicating that Plaintiff could "follow simple job instructions (i.e. perform one and two step tasks)." (*See* Doc. 10-3 at 23-24.) Because the ALJ did not identify *any* reason for rejecting a limitation to "one and two step tasks" when formulating the RFC, the ALJ failed to carry the burden to properly address the medical opinions. *See Sousa v. Callahan,* 143 F.3d 1240, 1244 (9th Cir. 1998) (an ALJ "may reject the opinion of a non-examining physician by

reference to specific evidence in the medical record"); *see also Davenport v. Colvin*, 2015 WL 7769684, at *3 (E.D. Cal. Dec. 1, 2015) (observing that where the ALJ did not provide "any reasoning" to justify the presumed rejection of a physician's opinion, the Court could not "conduct a meaningful review of the ALJ's decision").

### 3. Harmless error

At step five, the burden shifts to the Commissioner to show Plaintiff can perform substantial gainful activity and a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). To make this determination, the ALJ may rely upon job descriptions in the *Dictionary of Occupational Titles* ("DOT"), which classifies jobs by their exertional and skill requirements, and is published by the United States Department of Labor, Employment & Training Administration. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R. § 404.1566(d)(1). In the alternative, the ALJ may call a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see also* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 at *2 ("In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy.")

In the *Dictionary of Occupational Titles*, each job each job description includes a General Educational Development ("GED") definition that "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Salas v. Astrue*, 2011 WL 2620370 at *5 (E.D. Cal. June 29, 2011) (quoting *Grigsby v. Astrue*, 2010 WL 309013, at *2 (C.D. Cal. Jan. 22, 2010)).  The GED scale includes a scale for "reasoning development," which ranges from Level 1 (low) to Level 6 (high).

Reasoning Levels 1 and 2 are defined in Appendix C of the *Dictionary of Occupational Titles* as the following:

> Level 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in

> or from standardized situations.
>
> Level 3: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

*DOT*, Appendix C: Components of the Definition Trailer, 1991 WL 688702; *see also Rounds v. Comm'r SSA*, 807 F.3d 996, 1002-1003 (9th Cir. 2015).

The Ninth Circuit determined that Reasoning Level 2 conflicts with a limitation to "one and two step tasks." *Rounds*, 807 F.3d at 1003. The jobs identified by the vocational expert all required Reasoning Level 2 on the GED scale, and the plaintiff argued her limitation to "one to two-step tasks" matched Level 1. *Id.* The Ninth Circuit agreed, explaining:

> There was an apparent conflict between Rounds' RFC, which limits her to performing one- and two-step tasks, and the demands of Level Two reasoning, which requires a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." The conflict between Rounds' RFC and Level Two reasoning is brought into relief by the close similarity between Rounds' RFC and Level One reasoning. Level One reasoning requires a person to apply "commonsense understanding to carry out simple one- or two-step instructions."

*Id.*, 807 F.3d at 1003. Thus, the Ninth Circuit determined there is an apparent conflict between a claimant's limitation to one and two step tasks and a job requiring reasoning exceeding Level 1. *Id.*; *see also Lara v. Astrue*, 305 Fed. App'x. 324, 326 (9th Cir. 2008) ("Reasoning Level 1 jobs are elementary, exemplified by such tasks as counting cows coming off a truck, and someone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication-in other words, Reasoning Level 2 jobs"). Consequently, if the ALJ adopted the limitation to "one and two step tasks" identified by Drs. Mancini and Brooks-Warren, Plaintiff would be limited to Reasoning Level 1 work, while the restriction to "simple, routine, and repetitive tasks" identified in the RFC allows Reasoning Level 2 work. *See Grigsby v. Astrue*, 2010 WL 309013, at *2 (C.D. Cal. Jan. 22, 2010) ("The restriction to jobs involving no more than two-step instructions is what distinguishes Level 1 reasoning from Level 2 reasoning").

Plaintiff argues the ALJ's error in not rejecting the limitation to "one and two step tasks" was "material as to two occupations" identified by the ALJ at step five as examples of work Plaintiff could perform: electrical accessories assembler (DICOT 729.687-010) and marker (DICOT 209.587-034). (Doc. 14 at 8.) As Plaintiff observes, these two positions require Reasoning Level 2. *See* DICOT

729.687-010, 1991 WL 679733; DICOT 209.587-034, 1991 WL 671802.  Thus, the Reasoning Level exceed the mental abilities identified by Drs. Mancini and Brooks-Warren.  However, as the Commissioner observes, the third position identified by the ALJ at step five was "Housekeeper," and it requires Reasoning Level 1.  *See* DICOT 323.687-014, 1991 WL 672783.

Plaintiff does not argue that the Reasoning Level for the position of "Housekeeping" exceeds her abilities or conflicts with the limitations identified by the State Agency physicians.  (*See* Doc. 14 at 8; Doc. 16 at 5.)  Relying on the testimony of the vocational expert, the ALJ indicated there are "approximately 78,797 jobs nationally" for the position, and Plaintiff also does not argue this number is insufficient to constitute a "significant number" at step five.  (*See id.*; Doc. 10-3 at 25.)  The Ninth Circuit determined 25,000 jobs in the national economy was sufficient to meet this standard. *See Gutierrez v. Comm'r*, 740 F.3d 519, 523 (9th Cir. 2014). This Court and others have also determined that 15,000 or more jobs are a "significant number" in the national economy. *See, e.g., Davis v. Comm'r of Soc. Sec.*, 2018 WL 1779341 at *6 (E.D. Cal. Apr. 12, 2018) (finding 15,000 national jobs to be significant number); *Jeter v. Berryhill*, 2018 WL 2121831 at *3 (C.D. Cal. May 8, 2018) ("Although at the low end, the ALJ's finding as to [20,000] national jobs meets the legal standard"). Consequently, the Court finds the number of housekeeping positions alone establishes a significant number of jobs in the national economy.

Because the ALJ identified a significant number of jobs that Plaintiff can perform even if limited to "one and two step tasks" and Reasoning Level 1, the error of not adopting the limitation in the RFC and identifying Reasoning Level 2 positions does not negate the step five determination, and was harmless.[2]  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("an error is harmless so long as [it]… does not negate the validity of the ALJ's ultimate conclusion"); *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (court will not reverse a decision for harmless error, which exists when "the ALJ's error was inconsequential to the ultimate nondisability determination").

---

[2] Indeed, in the reply brief, Plaintiff implicitly acknowledges the error related to her mental RFC was harmless as to the housekeeping position by stating: "The Court should find that *two of the three occupations* have an apparent conflict with the limitations found by Dr. Mancini and Dr. Brooks-Warren." (Doc. 16 at 5, emphasis added.)  Further, Plaintiff indicated "[t]he Court should turn to the second issue [related to physical limitations] to resolve the question of housekeeper." (*Id.*)

**B.      Vocational Expert Testimony**

When eliciting testimony from a vocational expert, the ALJ must pose "hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration." *Tackett*, 180 F.3d at 1101, quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987).  Thereafter, the vocational expert testifies as to what kind of jobs a claimant can perform, and whether there is a sufficient number of jobs available in the economy to support a finding that the claimant is not disabled. *Id.*, *see also* 20 C.F.R. § 404.1566(b).  "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that the claimant has a residual working capacity has no evidentiary value."  *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

The ALJ called upon vocational expert Jenifer Larue ("the VE") to "determine the extent to which [Plaintiff's] limitations erode the unskilled light occupational basis."  (Doc. 10-3 at 25.)  The resume of Ms. Larue was included in the record, and Plaintiff's counsel indicated he not have any objections to Ms. Larue serving as the VE in the action.  (*Id.* at 75; *see also* Doc. 10-7 at 80-82.)  The ALJ asked the VE to consider a hypothetical individual who had following physical limitations:

> [L]imited to light work as defined by the U.S. Department of Labor; never climbing ladders, ropes, scaffolds; occasionally to the following: climbing ramps, stairs, balance, stoop, knee, crouch, and crawl; handling which is gross manipulation with respect to bilateral upper extremities limited to frequently; avoiding more than frequent exposure to the following: extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dust, gases and poor ventilation, hazards, machinery, heights.

(*Id.* at 76.)  In addition, the ALJ identified several mental limitations.  (*Id.*)  The VE testified a person with the limitations identified could not perform Plaintiff's past relevant work as a cashier "due to interaction" with others.  (*Id.*)  The VE believed the individual could perform other "light and unskilled" work, including housekeeper, DOT 323.687-014.  (*Id.* at 76-77.)

1       "Light work"

To evaluate the physical exertion requirements of work, the Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy.  "These terms have the same meaning in both the Social Security regulations and the Dictionary of Occupational Titles."  *Moore v. Colvin*, 2013 WL 5302799, at *5 n.10 (E.D. Cal. Sept. 18, 2013) (citing 20 C.F.R. § 404.1567 ["These

terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor"]). Under the Regulations, "light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b). Similarly, "light work" is defined as follows in the *Dictionary of Occupational Titles*:

> L-Light Work- Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

*Dictionary of Occupational Titles* (4th Ed., Rev. 1991), Appendix C.

The Social Security Rulings also address the physical exertion requirements of work in the national economy.[3] Social Security Ruling ("SSR") 83-10 was issued in 1983 "to provide definitions of terms and concepts frequently used in evaluating disability under the medical-vocational rules." *Id.*, 1983 WL 31251, at *1. SSR 83-10 notes that under the Regulations "light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.*, 1983 WL 31251, at *5. Further, SSR 83-10 provides:

> Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress

---

[3] Social Security Rulings are issued by the Commissioner to clarify regulations and policies. Though they do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

>sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.
>
>"Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.

*Id.*, 1983 WL 31251, at *5-6. Thus, the Social Security Ruling indicates that light work requires a claimant to be able to stand and/or walk for a total of six hours in an eight-hour day. *Id.*

2. Analysis

Plaintiff contends the ALJ erred in asking the vocational expert to assume a definition of light work that was "incompatible with the finding actually made." (Doc. 14 at 9, emphasis omitted.) Plaintiff observes that while "[t]he ALJ directed the vocational expert to assume a capacity to perform light work but… [t]he Department of Labor does not impose a limitation in the ability to stand/walk within the confines of light work." (*Id.*, citing DICOT Appendix C.) Further, Plaintiff notes the regulations to not "describe a limitation in the amount of standing/walking during an eight-hour day." (*Id.*, citing 20 C.F.R. § 416.967(b).) Because the ALJ limited Plaintiff to six hours of walking each day and six hours of sitting in the residual functional capacity, Plaintiff contends: "The Court should find that the ALJ erred in failing to propound a complete hypothetical question to the vocational expert." (*Id.* at 11, citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).)

Plaintiff acknowledges the Ninth Circuit indicated the "invocation of an exertional capacity incorporates the definition found in the Social Security Ruling 83-10." (Doc. 14 at 9, citing *Terry v. Saul*, 998 F.3d 1010 (9th Cir. May 28, 2021).) However, Plaintiff maintains that "[i]f the Commissioner wants to take administrative notice of facts not originating from notice and comment and placed in the regulations, the Commissioner must give notice." (*Id.* at 10, citing *Sykes v. Apfel*, 228 F.3d 259, 261, 264-65, 272-74 (3d Cir. 2000).) Plaintiff argues, "*Terry* creates a conflict with *Sykes* by elevating a ruling to a legislative fact without notice and comment, an issue not raised in *Terry*." *Id.* According to Plaintiff, when "[t]he ALJ directed the vocational expert to assume light work as defined by the Department of Labor, the ALJ invited the vocational expert to assume a capacity to stand/walk eight hours during an eight- hour day." (*Id.*)

The Commissioner argues that Plaintiff's "argument lacks legal support, and in fact, directly contravenes a recent published opinion from the Ninth Circuit." (Doc. 15 at 16.) The Commissioner contends, "This Court should reject Plaintiff's attempt to manufacture some sort of meaningful conflict that would impugn *Terry*. First, *Terry*, not *Sykes*, is the law of this Circuit, and second, *Sykes* is nowhere near on point." (*Id.* at 18.) Thus, the Commissioner contends the Court should follow *Terry* and find "an ALJ does not need to refer to SSR 83-10 or expressly define light work as requiring a total of six hours of standing/walking in order for 'light work' to have such meaning in the context of the hypothetical questioning." (*Id.* at 18-19.)

In *Terry*, the claimant asserted the ALJ determined the claimant had the ability "to perform medium work as defined in 20 CFR [§] 404.1567(c)" and could "sit, stand or walk up to 6 hours in an 8 hour workday." *Id.*, 998 F.3d at 1012. Questioning the vocational expert, the ALJ indicated Terry had "the capacity to do medium work," but did not identify the sitting, standing, and walking limits that were later specified in the residual functional capacity. *Id.* at 1013. Appealing the decision, Terry argued "the vocational expert's testimony did not constitute substantial evidence supporting the ALJ's finding regarding the availability of work for someone with Terry's limitations because the ALJ did not reference Terry's six-hour standing and walking limitation in his questioning of the expert." *Id.* at 1012-13. The Ninth Circuit concluded it was "not persuaded" by Terry's arguments, explaining:

> "Medium work" is a term of art in disability law with a well-established meaning. 20 C.F.R. § 404.1567(c). While the regulation defining "medium work" does not include any express standing and walking limitation, the Social Security Administration has long interpreted this language to include such a restriction. In a 1983 published Social Security Ruling, the Commissioner interpreted "medium work" to "require[] standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday."

*Id.* at 1013, quoting SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). The Court observed "the testifying vocational expert had significant experience in the vocational rehabilitation field and as an expert witness" and "Terry's counsel did not object to the expert's qualifications or otherwise challenge the expert's testimony at the administrative hearing." *Id.* The Court found "no reason to think that the vocational expert was not familiar with Social Security Ruling 83-10 and the agency's longstanding interpretation of 'medium work.'" *Id.* Therefore, the Court concluded "the ALJ's reference to the term in his questioning of the expert sufficiently conveyed Terry's standing and walking limitations." *Id.*

Following *Terry*, courts throughout the Ninth Circuit have determined an ALJ did not err in identifying an exertional level for the vocational expert without the sitting, standing, or walking limitations that are later specified in the claimant's RFC. *See, e.g., Roberta G. v. Kijakazi*, 2021 U.S. Dist. LEXIS 179074, at *4 (C.D. Cal. Sept. 20, 2021) (finding the ALJ did not err by not "explicitly including" a standing and walking limitation in the hypothetical to a vocational expert, who testified an individual limited to "light work" could perform the position of housekeeping cleaner); *Teresa M. v. Kijakazi*, 2021 WL 2941978, at *8 (C.D. Cal. July 13, 2021) ("[t]he ALJ was not required to spell out the standing and walking limit because it was implicit in 'light work'"); *Kenneth S. v. Comm'r, Soc. Sec. Admin.*, 2021 WL 5107722, at *5 n.5 (D. Or. Nov. 3, 2021) ("Plaintiff's argument that the ALJ … erred by not including any specific limitations on sitting, standing, or walking is foreclosed by the Ninth Circuit's decision in *Terry*"); *Katrina B. v. Comm'r of Soc. Sec.*, 2021 WL 3661450 at *3 (W.D. Wash. Aug. 17, 2021) (finding "the ALJ's reference to 'sedentary work' as defined in the regulations adequately defines the Claimant's exertional abilities, given that SSR 83-10 defines 'sedentary work' to require, inter alia, mostly sitting, but up to two hours standing/walking….").

Importantly, as the Commissioner observes, *Terry* is controlling authority for courts in this Circuit, while Plaintiff attempts to rely upon a Third Circuit case for the proposition that the ALJ was required to set forth the specific standing and walking limitations with the exertional limitation in a hypothetical posed to the vocational expert. The Ninth Circuit clearly rejected this argument. *Terry*, 998 F.3d at 1012-13. As in *Terry*, Plaintiff's counsel did not object to the VE's qualifications at the hearing, and the resume of the VE reflects significant experience as an expert and with vocational rehabilitation.. (*See* Doc. 10-3 at 75; Doc. 10-7 at 80-82.) Furthermore, there is nothing to suggest the VE was not familiar with the term "light work" and the corresponding limitations in the Regulations and SSR 83-10. Consequently, the ALJ's reference to "light work" in the hypothetical question to the VE "sufficiently conveyed [Plaintiff's] standing and walking limitations" of six hours in an eight-hour day. *See Terry*, 998 F.3d at 1013; *see also Teresa M.*, 2021 WL 2941978, at *8 (finding the ALJ did not err by asking the expert "to assume a hypothetical worker who 'would be limited to light work as decided in the regulations,'" and because the standing and walking limit was implicit in the limitation to "light work"). Plaintiff fails to show any error by the ALJ in posing the hypothetical question to the

VE.

### C.     Vocational Data Presented to the Appeals Council

In support of her assertion of error, Plaintiff cites vocational evidence from "Occu Collect" and "Occupational Outlook Handbook," which was submitted to the Appeals Council with the representative brief. (Doc. 14 at 11, citing AR 400 [Doc. 10-7 at 133].) According to Plaintiff, the cited data shows many maids and housekeepers stand more than six hours each day. (*Id.*)

The Commissioner notes that "counsel also made this argument in *Terry*," and the Ninth Circuit rejected the argument and evidence. (Doc. 15 at 20, citing *Terry*, 998 F.3d at 1013.) Further, the Commissioner argues: "Plaintiff's Appeals Council evidence in this case is even more suspect in that she relies on printouts from Occu Collect, a company whose proprietor is Lawrence D. Rohlfing, Plaintiff's counsel in this case. Mr. Rohlfing is not a vocational expert and the Court should reject his belated attempt to play vocational expert by submitting printouts from his own company." (*Id.* at 21, citing *Grether A. D. v. Saul*, 2021 WL 1664174, at *8 n.8 (C.D. Cal. Apr. 28, 2021) [ "the non-DOT sources [claimant] cites are not conclusive regarding the standing requirements for the jobs the vocational expert identified" and noting counsel has a 51% interest in Occu Collect].)

Notably, in *Terry*, the plaintiff cited "O*Net data and information from the Occupational Requirements Survey, which became part of the administrative record as new evidence submitted to the Appeals Council," in support of the argument that "jobs identified by the vocational expert require more than six hours of standing or walking per day." *Terry*, 998 F.3d at 1013. The Court rejected this evidence, stating:

> As noted, a qualified vocational expert is presumptively familiar with the meaning of "medium work" as a term of art and its attendant limitations. The expert's opinion that an individual with Terry's restrictions could work as an order filler, packager, and laundry worker was supported by her unchallenged expertise and her reference to the Dictionary of Occupational Titles. This constituted substantial evidence in support of the ALJ's finding that Terry could perform jobs existing in significant numbers in the national economy.

*Id.* (citing *Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020).

As in *Terry*, the VE's expertise was not challenged and she identified positions by reference to the *Dictionary of Occupational Titles*. *See Terry*, 998 F.3d at 1013. Moreover, courts have "refused to find that Plaintiff's attorney-owned Occu-Collect resource [is] controlling." *Dickerson v. Saul*, 2021

WL 3832223 (D. Nev. Aug. 27, 2021) (collecting cases); *see also Grether,* 2021 WL 1664174, at *8 n.8 (rejecting the "Occu Collect data" provided to the Appeals Council, noting "[t]he ALJ was not presented with these sources and, even if the ALJ had been presented with these sources, the ALJ would have had no duty to consider whether the vocational expert's testimony was consistent with these sources"). Consequently, the testimony of the vocational expert was substantial evidence in support of the determination that Plaintiff could perform work in the national economy—including the position of housekeeper— and the cited data does not undermine the findings of the ALJ at step five. *See Terry*, 998 F.3d at 1013.

**CONCLUSION AND ORDER**

For the reasons set for above, the Court finds the ALJ's error in addressing Plaintiff's mental limitations was harmless. The ALJ did not pose an incomplete hypothetical question to the VE, and the decision of the ALJ is supported by substantial evidence in the record. Therefore, the conclusion that Plaintiff is not disabled as defined by the Social Security Act must be upheld by the Court. *See Sanchez*, 812 F.2d at 510; *Terry*, 998 F.3d at 1013. Accordingly, the Court **ORDERS**:

1. Plaintiff's appeal of the ALJ's decision (Doc. 14) is **DENIED**;
2. The decision of the Commissioner of Social Security is **AFFIRMED**; and
3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Lora Beth Priestly.

IT IS SO ORDERED.

Dated: __November 28, 2021__          _____ /s/ Jennifer L. Thurston
                                       CHIEF UNITED STATES MAGISTRATE JUDGE